UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHAWN MITCHELL,<br>　　　　Plaintiff,<br>　　v.<br>K. KOCINSKI,<br>　　　　Defendant. | Case No. 14-cv-00863-VC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 35 |

Deshawn Mitchell, a state prisoner, filed a *pro se* civil rights complaint asserting a First Amendment retaliation claim against Correctional Officer K. Kocinski on the ground that Kocinski made false statements in connection with Mitchell's request to transfer to a Special Needs Yard ("SNY"). Kocinski has filed a motion for summary judgment, which is fully briefed, and a request for judicial notice of the Department of Corrections' Department Operations Manual ("DOM"). Mitchell has filed a motion to direct Kocinski to answer the complaint. The request for judicial notice is granted, the motion to direct an answer to the complaint is denied as moot, and the motion for summary judgment is granted.

## BACKGROUND

**I. Kocinski's Evidence**

**A. Department of Corrections' Regulations Regarding SNY Investigation Process**

SNYs provide secure housing for inmates whose safety would be endangered by placement in the general prison population. DOM § 62050.11. An inmate may be placed in an SNY if he is not a documented member of a prison gang and does not pose a threat to other inmates in the SNY. DOM § 62050.11.2. At Pelican Bay State Prison, where Mitchell was housed, inmate

requests to be placed in the SNY were investigated by an officer whose job was to ask the inmate a standard list of questions and to direct the inmate to prepare an autobiography detailing his prior gang activity. Kocinski Dec. ¶¶ 2, 4. The officer then prepares a confidential report of the investigation with his recommendation for whether the inmate should be assigned to the SNY. *Id.* ¶ 6. Preparing the report is a lengthy process requiring several levels of review; an investigator has no control over the review process. *Id.* ¶¶ 5-8. The report is not finalized and placed in the inmate's central file until it receives the final approval from the Investigation Services Unit captain. *Id.* ¶ 7. The report is not available for review by the classification committee until it is approved and placed in the inmate's file. *Id.* ¶ 8.

Careful consideration is required for determining an inmate's request for placement in the SNY because the requesting inmate could be attempting to access the SNY to victimize one of those inmates. Countess Dec. ¶ 10.

**B. Kocinski's Investigation**

Mitchell was a member of the Watts Grape Street Crip street gang and was housed in the Secured Housing Unit because of his disruptive behavior. Boergers Dec., Ex. C. Mitchell requested placement in the SNY, stating he wished to disassociate from his gang. *Id.*, Ex. D. Kocinski was assigned to investigate Mitchell's request and, on September 6, 2011, Kocinski interviewed Mitchell. *Id.*, Ex. E. Kocinski believed Mitchell was uncooperative because he described only gang activity previously documented in his central file, and did not identify specific people involved in gang activity. Kocinski Dec. ¶ 5. Kocinski believed this showed that Mitchell was not serious about disassociating from his gang. *Id.*

After his investigation was complete, Kocinski prepared his confidential report. *Id.* ¶ 6; Report (Under Seal). The date in the header of the report is September 6, 2011, which reflects the date that Kocinski began preparing it, not the date it was completed. *Id.* at 1; Kocinski Dec. ¶ 10. On October 12, 2011, the classification committee held a hearing on Mitchell's housing status. Boergers Dec., Ex. F. When the committee could not locate Kocinski's report, it contacted Kocinski, who told them the report was in progress. *Id.* The report was approved for placement in Mitchell's central file on November 9, 2011. Report at 1; Kocinski Dec. ¶¶ 11, 13; Countess Dec.

2

¶ 8. This is evidenced by the date stamp and signature on the first page of the report indicating when it was approved by the captain. Report; Kocinski Dec. ¶ 11.

Based on Kocinski's recommendation, the committee did not place Mitchell in the SNY. At his hearing, Mitchell stated that he "did not feel it was necessary to answer questions about information that was not already documented in his central file." Boergers Dec., Ex. I. The committee told Mitchell that he needed to be more cooperative in the investigation. Subsequently, Sergeant Countess was assigned to conduct another investigation of Mitchell's SNY request. Countess' report recommended that Mitchell be housed in the SNY and the committee followed this recommendation. Boergers Dec., Ex. N.

**II. Mitchell's Evidence**

On September 6, 2011, Kocinski interviewed Mitchell, who sought placement in the SNY out of concern that he was not safe in the general prison population because he was in debt. Mitchell Dec. ¶ 4. Kocinski told Mitchell that he would not endorse him for the SNY because he refused to become a confidential informant. *Id.*

On September 21, 2011, Mitchell appeared before the classification committee for the reduction of his mental health level of care and for release from the Secured Housing Unit. *Id.* ¶ 5. The committee thought Kocinski's report was completed, but could not find it in Mitchell's central file. *Id.* As a result, the committee did not rule on Mitchell's request to be placed in the SNY, but it also did not release Mitchell from the Secured Housing Unit, based on the safety concerns he expressed about being in the general population. *Id.*

On October 10, 2011, the classification committee contacted Kocinski about the status of his report on Mitchell. Kocinski told the committee that the report was "in progress." *Id.* ¶ 6. Mitchell believes the report was completed on September 6, 2011 because this is the date on the first page of the report and, thus, he believes that Kocinski's statement to the committee was false. *Id.* On October 12, 2011, Mitchell again appeared before the classification committee. *Id.* ¶ 7. Because the committee did not have Kocinski's report, Mitchell was not placed in the SNY or released from the Secured Housing Unit. *Id.* Continued placement in the Secured Housing Unit meant that Mitchell could not have a job assignment, participate in religious services or have visits

from family members. *Id.*

On November 20, 2011, Mitchell complained to Counselor M. Statham about Kocinski. *Id.* ¶ 8. On April 10, 2012, Mitchell filed a grievance against Kocinski. *Id.* ¶ 9. On April 18, 2012, Mitchell again appeared before the classification committee and was informed that he would be re-interviewed by Kocinski. *Id.* ¶ 10. On August 2, 2012, when the committee contacted Kocinski about his re-investigation, he said he was unaware that the re-investigation had been assigned to him. *Id.* ¶ 11. As a result, Mitchell stayed in the Secured Housing Unit. *Id.* On August 7, 2012, when Mitchell was interviewed by Countess, he repeated what he had originally told Kocinski. *Id.* ¶ 12. Countess informed Mitchell that he would recommend him for placement in the SNY. *Id.* On October 31, 2012, the committee assigned Mitchell to the SNY. *Id.* ¶ 13.

## LEGAL STANDARD

Summary judgment is only proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing Fed. R. Civ. P. 56(e). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty*

4

*Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby,* 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

On a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999).

## DISCUSSION

Within the prison context, a First Amendment retaliation claim requires proof that a state actor took adverse action against an inmate because of the inmate's protected expressive activity. Moreover, the adverse action must chill the inmate's exercise of his First Amendment rights, and it must not be reasonably related to a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). The plaintiff must show that his expressive activity was the "substantial" or "motivating" factor behind the defendant's conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

Mitchell asserts that his protected conduct was his "right to be free from harm because he was in debt," and his right to file grievances. Opp. at 7. But Mitchell's first example does not implicate the First Amendment, so the question is whether there is evidence Kocinski retaliated against Mitchell for filing a grievance or trying to file a grievance.

According to Mitchell, Kocinski's adverse actions consisted of two "false" statements to the classification committee: (1) on October 10, 2011, he told the committee that his investigative report was "in progress;" and (2) on August 2, 2012, he told the committee he was unaware that Mitchell's re-investigation had been assigned to him. Opp. at 11-12.

I. **October 10, 2011 Statement**

According to Mitchell, his protected conduct occurred on November 20, 2011, when he complained to another officer about Kocinski, and on April 10, 2012, the date he filed a grievance against Kocinski. Therefore, Kocinski's first statement, made on October 10, 2011, could not have been motivated by Mitchell's protected conduct because it occurred before Mitchell complained or filed his grievance.

5

**II. August 2, 2012 Statement**

Mitchell's assertion that Kocinski's August 2, 2012 statement is an adverse action is suspect because, at his deposition, he testified that Kocinski's October 2011 statement was the only adverse action. *See* Boergers Dec., Ex. A, Mitchell Depo. at 31-35; s*ee also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (a party cannot create issue of fact to defeat summary judgment with an affidavit contradicting deposition testimony).

Even if the Court considers Kocinski's August 2, 2012 statement, it cannot support Mitchell's claim because he has not submitted evidence suggesting that it was false. The only evidence of falsity Mitchell presents are: (1) the classification committee meeting minutes reporting Kocinski's statement that he was unware that he had been assigned Mitchell's re-investigation, *see* Opp., Ex. D; and (2) Mitchell's conclusory allegation, in his declaration, that Kocinski's statement was false, s*ee* Mitchell Dec. ¶¶ 11, 14. Mitchell's conclusory allegation that the statement was false is insufficient. *See Taylor v. List*, 880 F.2d 1040, 1045-50 (9th Cir. 1989) (conclusory allegations unsupported by factual data insufficient to defeat summary judgment). Although on a motion for summary judgment, inferences from the evidence are to be made in favor of Mitchell as the nonmoving party, he has presented no evidence from which an inference can be made to show that Kocinski's statement was false.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court grants the motion for summary judgment and denies the motion to direct Kocinski to file an answer as moot. Dkt. Nos. 28 and 35.

2. The Clerk shall terminate all pending motions, enter a separate judgment and close the case.

**IT IS SO ORDERED**.

Dated: September 8, 2015

VINCE CHHABRIA
United States District Judge

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHAWN MITCHELL,<br>    Plaintiff,<br>v.<br>K. KOCINSKI,<br>    Defendant. | Case No. 14-cv-00863-VC<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 8, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Deshawn Mitchell ID: K-70241
P.O. Box 5007
Calipatria, CA 92233

Dated: September 8, 2015

Susan Y. Soong
Clerk, United States District Court

By:_____
Kristen Melen, Deputy Clerk to the
Honorable VINCE CHHABRIA